UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:08-15-KKC

ELLA FRENCH                                                                                    PLAINTIFF

v.                                          **OPINION AND ORDER**

MICHAEL ASTRUE,
*Commissioner of Social Security*                                              DEFENDANT

\* \* \* \* \* \* \*

This matter is before the Court on the parties' cross motions for summary judgment. For the reasons stated below, the Court hereby orders the Plaintiff's Motion for Summary Judgment **DENIED** and the Defendant's Motion for Summary Judgment **GRANTED**.

**I.     Introduction**

On December 22, 2003, Plaintiff filed concurrent applications for Disability Insurance Benefits and Supplemental Security income, alleging disability since July 30, 2003. The claims were denied initially and upon reconsideration. At Plaintiff's request, a hearing was held before an administrative law judge ("ALJ") on September 6, 2006 in Cincinnati, Ohio. Plaintiff was represented by counsel, appeared personally and testified at the hearing. A vocational expert, William T. Cody, also appeared and testified. The ALJ denied Plaintiff's application in a written decision issued on December 18, 2006. The Appeals Council denied Plaintiff's request for review, and, therefore, the ALJ's decision stands as the Commissioner's final decision and is now ripe for review under 42 U.S.C. § 1383(c)(3).

## II. Discussion

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

### B. Overview of the Process

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to determine whether a social security disability claimant qualifies as legally disabled, and is thus deserving of disability insurance benefits and supplemental security income. *See* 20 C.F.R. §

404.1527(e)(1). To make this determination, the ALJ follows a five-step sequential analysis. First, the claimant must show that she is not engaging in substantial gainful activity. *Id.* § 404.1520(a). If the claimant is engaging in substantial gainful activity, then she is not disabled regardless of her medical condition, age, education, or work experience. *Id.* § 404.1520(b). Second, the claimant must show that she has a mental or physical impairment or combination of impairments that is severe. *Id.* § 404.1520(a). If the claimant does not have a severe mental or physical impairment or combination of impairments, she is not disabled. *Id.* § 404.1520(c). Third, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment. *Id.* § 404.1520(a). If the claimant's impairment or combination of impairments meets or medically equals a listed impairment, then she is disabled. *Id.* § 404.1520(d). If not, then the ALJ must determine the claimant's residual functional capacity before proceeding to the fourth step. *Id.* § 404.1520(e). In the fourth step, the ALJ determines if the claimant has the residual functional capacity to perform her past relevant work. *Id.* § 404.1520(a). If the claimant cannot perform her past relevant work, then the burden shifts to the Commissioner in the final step to show that there is sufficient work in the national economy that the claimant can perform given her residual functional capacity, age, education, and work experience. *Id.*; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If no such work exists, then the claimant is legally disabled. *Id.* § 404.1520(a).

**C.    The ALJ's Decision**

In his written decision, the ALJ outlined and followed the five-step analysis set forth in the Social Security Administration's disability regulations and found at 20 C.F.R. §§ 404.1520 and 416.920. [Tr. 18-26]. First, the ALJ determined that Plaintiff had not engaged in substantial

gainful activity after the date of the alleged onset of disability. [Tr. 19-20]. Next, the ALJ found that Plaintiff had the following severe medically determinable impairments: migraine headaches, occlusive right cartoid artery vascular disease, degenerative disc disease in the cervical spine, obesity, and depression. [Tr. 20]. In the third step of his analysis, the ALJ then concluded that Plaintiff's impairments do not meet or medically equal a listed impairment. [Tr. 22]. Because Plaintiff's impairments did not meet or medically equal a listed impairment, the ALJ assessed Plaintiff's residual functional capacity. [Tr. 22]. In making this assessment, the ALJ considered opinions from the following: Dr. Anzures and Dr. Hernandez, medical consultants for the state agency; Dr. Sander, Plaintiff's treating physician; Dr. Schneider, Plaintiff's treating neurologist; Dr. Zuccarello from Mayfield Clinic; and Dr. Becker from Riverhills Healthcare. [Tr. 22-24]. Ultimately, the ALJ concluded that Plaintiff has the residual functional capacity to perform the requirements of work activity subject to a rather long list of limitations. [Tr. 24]. The ALJ then found that because of her limitations, Plaintiff could not perform her past relevant work. [Tr. 24]. In the final step of his analysis, the ALJ, relying largely on the testimony of the vocational expert, found that there were a significant number of jobs in the national economy that Plaintiff could perform. [Tr. 25]. The ALJ therefore concluded that Plaintiff is not disabled as defined in the Social Security Act. [Tr. 25].

**D.** **Analysis**

Plaintiff argues that substantial evidence does not support the ALJ's determination of her residual functional capacity because it is contrary to the medical opinions of Dr. Deters, Dr. Sander, and Dr. Schneider. Plaintiff also argues that because the ALJ presented incomplete hypothetical questions to the vocational expert, the finding that there are jobs in the national

4

economy that Plaintiff can perform is not based on substantial evidence. Additionally, Plaintiff challenges the vocational expert's testimony that hand packer, sedentary assembler, and sedentary inspector jobs are sedentary jobs because the Dictionary of Occupational Titles classifies the jobs as light jobs.

**a. The ALJ Properly Determined Plaintiff's Residual Functional Capacity**

Residual functional capacity is the most that a claimant can still do in a work setting despite any physical or mental limitations that the claimant has. 20 C.F.R. § 416.945(a). It is the responsibility of the ALJ to determine this residual functional capacity. *Id.* § 416.946(d). The ALJ is to make this determination "based on all of the relevant medical and other evidence." *Id.* § 416.945(a)(3). The ALJ is also to consider "any statements about what you [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations," as well as "descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain . . . ." *Id.* All of the claimant's impairments are to be considered in determining the residual functional capacity, including those that are not found to be "severe" within the meaning of the Social Security Act. *Id.* §§ 416.945(a)(2), 416.945(e). In addition, all of the claimant's symptoms, including pain, are considered in determining the claimant's residual functional capacity and disability, to the extent that these symptoms "can reasonably be accepted as consistent with the objective medical evidence, and other evidence." *Id.* § 416.929(a).

When considering the medical and other evidence of record for the residual functional capacity determination, the ALJ is directed to place varying amounts of weight on the medical evidence, which may take the form of medical opinions, depending on the type of medical source

the evidence comes from. Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments. 20 C.F.R. § 404.1527(a)(2). Medical sources refer to three different types of sources that provide evidence about a claimant's impairments: treating sources, nontreating sources, and nonexamining sources. *Id.* § 404.1502. A treating source is a claimant's own physician, psychologist, or other acceptable medical source who provides, or has provided, the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. *Id.* A nontreating source is a physician, psychologist, or other acceptable medical source who has examined the claimant but does not have, or did not have, an ongoing treatment relationship with the claimant. *Id.* A nonexamining source is a physician, psychologist, or other acceptable medical source who has not examined the claimant but provides a medical or other opinion in the claimant's case. *Id.*

  The ALJ must evaluate every medical opinion he receives, regardless of the type of medical source it comes from. *Id.* § 404.1527(d). More weight is to be given to opinions of treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ." *Id.* § 404.1527(d)(2). The ALJ must give an opinion of a treating source controlling weight in his disability determination if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's case record. *Id.* If the treating opinion is not given controlling weight, it must be evaluated according to other factors generally used when considering medical opinions. *Id.* These factors include, among

6

other things, whether the opinion is supported by objective medical evidence, whether the opinion is consistent with the record as a whole, and whether the opinion is made by a specialist about medical issues relating to his or her area of specialty. *Id.* § 404.1527(d)(3)-(5).

**1. The ALJ Properly Considered Dr. Deters' Medical Opinion**

On April 3, 2004, Dr. Deters performed a consultative psychological evaluation of Plaintiff. [Tr. 323-329]. In that evaluation, Dr. Deters deferred diagnosis of a mental disorder and ruled out a dysthymic disorder. [Tr. 328]. In her medical source statement, Dr. Deters asserted that Plaintiff did not seem likely to adapt to the pressures of a day-to-day work setting because of her chronic pain. [Tr. 329] She also concluded that Plaintiff could not sustain concentration and persistence to complete tasks in a normal amount of time. [Tr. 329].

The ALJ reviewed Dr. Deters' psychological evaluation and noted that her conclusion was not based on Plaintiff's depression, but rather her chronic pain. The ALJ rejected this evaluation because he found that, as a psychologist, Dr. Deters was not qualified to assess Plaintiff's physical condition or judge Plaintiff's subjective reports of disabling migraine headaches. [Tr. at 23]. As a psychologist, Dr. Deters' opinion would be entitled to greater weight as the opinion of a specialist in her field of specialty if it was based on a mental diagnosis. 20 C.F.R. § 404.1527(d)(5). But, as stated in her evaluation, she deferred diagnosis of a mental disorder and based her conclusions regarding Plaintiff's functional limitations solely on Plaintiff's reports of chronic pain. [Tr. 328-329]. As a psychologist, Dr. Deters is not qualified to assess Plaintiff's physical condition, and therefore the ALJ properly rejected her medical opinion because it was based on an assessment of an area outside of her specialty. *See, e.g., Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) ("Although Dr. Bielefeld did opine that

7

Buxton could not maintain employment . . ., that opinion was based on Buxton's underlying physical conditions, which Dr. Bielefeld, as a psychologist, was not qualified to diagnose.").

The ALJ also noted that Dr. Deters' conclusion was inconsistent with other evidence in the record, and he properly discounted Dr. Deters' evaluation because it was not consistent with the record as a whole. 20 C.F.R. § 404.1527(d)(4). Although Dr. Deters' asserted that Plaintiff could not adapt to the day-to-day pressure of work or sustain concentration or persistence in completing tasks in a normal amount of time, the ALJ noted Plaintiff's testimony that she cooks, does laundry and housework, talks with family and friends, attends church, and cares for a pets and farm animals. [Tr. 23]. The ALJ also noted that Plaintiff has not sought formal mental health treatment beyond medication. [Tr. 23]. Combining these, the ALJ concluded that Plaintiff is psychologically capable of carrying out simple instructions in the workplace, and he ultimately found that her only mental limitations are remembering and carrying out detailed instructions. [Tr. 23, 26]. Aside from the opinion of Dr. Deters, there is no medical evidence in the record to the contrary. The Court therefore finds that substantial evidence supports the ALJ's mental assessment of Plaintiff's residual functional capacity.

**2. The ALJ Properly Considered Dr. Sander's Medical Opinions**

Dr. Sander is Plaintiff's primary care physician. On June 14, 2006, he provided a medical opinion of Plaintiff's ability to do work related activities based on an assessment of her physical capabilities. [Tr. 467-470]. He placed the following physical limitations on Plaintiff's ability to work: she can occasionally lift five pounds; she can stand or walk for one hour without interruption but for no more than two to three hours a day; she can sit for one to two hours without interruption but for no more than four hours a day; she cannot climb, stoop, balance,

crouch, or crawl, and she can kneel occasionally; functionally, she is limited in reaching, handling, feeling, pushing, pulling, and seeing; she should be restricted from heights, moving machinery, extreme temperatures, humidity, and vibration; and sometimes her speech is hampered. [Tr. 468-470]. Dr. Sanders based these limitations on osteoarthritis, cerebral aneurysms, and cerebrovascular disease. [Tr. 468-470].

In reviewing Dr. Sander's medical source statement, the ALJ noted that Dr. Sander cited osteoarthritis and cerebrovascular disease as the medical conditions supporting his assessment. [Tr. 23]. The ALJ rejected the medical opinion because he concluded that the medical evidence in the record did not sufficiently support Dr. Sander's diagnosis of osteoarthritis and cerebrovascular disease. [Tr. 23]. Explaining his conclusion, the ALJ first commented that the record contains very little evidence regarding osteoarthritis outside of Plaintiff's cervical disc disease. [Tr. 23]. Earlier in his decision, the ALJ noted that although Dr. Sander diagnosed Plaintiff with osteoarthritis, there was no objective evidence confirming degenerative joint disease anywhere but in the cervical spine. [Tr. 21]. The ALJ pointed out that in Dr. Sander's treatment record that mentions osteoarthritis, the reference is to right shoulder pain, but there were no x-ray studies or clinical findings supporting this diagnosis. [Tr. 21].

The ALJ also rejected Dr. Sander's medical opinion because it was based on a diagnosis of cerebrovascular disease. [Tr. 23]. The ALJ noted that although Dr. Sander's asserted that Plaintiff's cerebrovascular disease caused numbness, loss of balance, speech impairment and diminished concentration, those symptoms were not documented in Dr. Sander's treatment notes or supported by the records of Plaintiff's treating neurologists and neurosurgeons. [Tr. 23]. One such specialist was Dr. Zuccarello, to whom Plaintiff was referred because of his familiarity with

neurovascular disease. [Tr. 279]. The ALJ noted that Dr. Zuccarello reviewed Plaintiff's test results and found nothing that required surgical intervention, and he stated that he thought Plaintiff could resume most of her activities. [Tr. 23]. He also noted that Plaintiff's gait, station, coordination, and muscle strength were normal. [Tr. 277]. As explained by the ALJ, although Dr. Sander placed functional limitations on Plaintiff because of a cerebrovascular disease, the medical evidence in the record contradicts that conclusion.

After reviewing the ALJ's analysis of Dr. Sander's medical opinion, the Court finds that the ALJ did not err by rejecting it. The ALJ properly showed the opinion was not supported by medical evidence in the record and inconsistent with the record as a whole. 20 C.F.R. § 404.1527(d)(3)-(4). Furthermore, regarding limitations based on cerebrovascular disease, the conclusions reached by Dr. Sander were inconsistent with those of Dr. Zuccarello, a neurovascular specialist, and the ALJ properly gave more weight to the opinion of a specialist because it related to his area of specialty. *Id.* § 404.1527(d)(5).

Plaintiff also contends that Dr. Sander's medical opinion is entitled to more weight because he is a treating physician. Although an ALJ must assign more weight to the medical opinion of a treating physician, that is only appropriate if the opinion is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's case record. *Id.* § 404.1527(d)(2). Here, the ALJ concluded that Dr. Sander's medical opinion was not supported by objective medical evidence and that it was inconsistent with other substantial evidence in the record. He properly rejected Dr. Sander's opinion on those grounds. Furthermore, substantial evidence in the record supports the ALJ's conclusion that Plaintiff is not functionally limited as asserted by Dr. Sander.

In October of 2003, Plaintiff reported work-related stress from her factory job that required heavy lifting of fifteen pounds one hundred times an hour. [Tr. 315]. After a physical exam in January of 2004, Dr. Becker concluded that Plaintiff's muscle strength, reflexes, and gait were normal. [Tr. 309]. As previously noted, Dr. Zuccarello reached this same conclusion. [Tr. 277]. In a later evaluation, Dr. Becker noted that although Plaintiff "no longer pitches hay for the horses" as it was too strenuous, she still feeds the goats, does her housework, and cooks. [Tr. 321]. In June of 2004, Dr. Hernandez, a state agency physician, reviewed the medical evidence and concluded that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for six hours of an eight-hour workday, sit for six hours of an eight-hour workday, and that she was unlimited in her ability to push or pull. [Tr. 331-338]. There was also evidence that Plaintiff had done some modest lifting while helping a relative move. [Tr. 408].

**3. The ALJ Properly Considered Dr. Schneider's Medical Opinions**

Dr. Schneider, Plaintiff's treating neurologist, saw Plaintiff four times in 2005 and 2006. In a letter dated November 9, 2006, he assessed Plaintiff's neurological symptoms and the effects of those symptoms on her ability to work. [Tr. 684]. He asserted that she has migraine headaches, intermittently severe, of variable frequency, occurring approximately twice a month. [Tr. 684]. During these headaches, he concluded that she would not be able to work. [Tr. 684]. He also noted that she has a tremor in her hands that impairs her ability to perform fine motor skills, and she has mild balance difficulty that adversely affects her ability to perform activities requiring changes in posture. [Tr. 684].

The ALJ reviewed Dr. Schneider's assessment and concluded that it was inconsistent with his own records and other medical evidence in the record regarding the frequency and

intensity of Plaintiff's headaches. [Tr. 22]. Earlier in his opinion, the ALJ discussed at length the medical evidence addressing Plaintiff's history of migraine headaches. [Tr. 20]. The ALJ noted that after numerous tests were performed and evaluated, and even though several small aneurysms were identified, Dr. Zuccarello advised Plaintiff that she could resume most of her daily activities. [Tr. 276]. The ALJ then discussed medical records from Dr. Becker, whom Plaintiff was seeing specifically because of her headaches. Dr. Becker reviewed Plaintiff's medical record and concluded that the aneurysms were asymptomatic and not related to her headaches. [Tr. 316]. He agreed with Dr. Zuccarello that surgical intervention was unnecessary. [Tr. 316]. The ALJ then noted that Dr. Becker's records indicated that Plaintiff's complaints of migraine headaches varied. Specifically, in September of 2004, Plaintiff told Dr. Becker that she had experienced no severe headaches and that she was on Topamax and the headaches were tolerable. [Tr. 364, 366]. In May of 2005, however, Plaintiff complained of having daily headaches, although they were relieved by Ibuprofen. [Tr. 400].

  Addressing inconsistencies between Dr. Schneider's conclusion and the medical evidence in his own records, the ALJ first noted that although Plaintiff complained in September of 2006 that her headaches were becoming more severe, just six months earlier Dr. Schneider stated that her headaches had not been a major issue and that they were only occurring every couple of months. [Tr. 22]. In that earlier assessment, Dr. Schneider indicated that most of Plaintiff's headaches responded to medication and that overall she was doing very well with the headaches. [Tr. 633]. The ALJ then noted that that assessment was consistent with the rest of Dr. Schneider's office notes as well as Dr. Sander's records, which rarely addressed Plaintiff's headaches. [Tr. 22].

The ALJ also addressed the limitations included in Dr. Schneider's assessment based on Plaintiff's hand tremor and dizziness. Regarding the dizziness, the ALJ pointed out that Dr. Schneider's record from March of 2005 indicates that Plaintiff's dizziness usually occurs when she first wakes up, and it normally goes away when she gets up moves around. [Tr. 636]. Dr. Schneider also noted that the dizziness was not associated with Plaintiff's headaches. [Tr. 636]. The ALJ then addressed Plaintiff's hand tremor, again noting earlier records from Dr. Schneider that contradicted his final conclusion. Specifically, the ALJ noted Dr. Schneider's statement in his evaluation from September of 2006 that Plaintiff's hand tremor was "somewhat unusual" and that it was suppressed when Plaintiff was distracted. [Tr. 686]. Dr. Schneider noted that Plaintiff's hand did not shake when putting on her glasses or holding a pen, and that her fine finger movements were equal on the right and left without bradykinesia or discoordination. [Tr. 686].

After reviewing the ALJ's thorough analysis of all the medical evidence in the record, the Court finds that the ALJ did not err by discounting Dr. Schneider's medical assessment of Plaintiff's functional limitations. Again, although an ALJ must assign more weight to the medical opinions of treating physicians, this is only appropriate where those opinions are based on objective medical evidence and are otherwise consistent with the record as a whole. 20 C.F.R. § 404.1527(d)(2). In this case, the ALJ carefully pointed out inconsistencies between Dr. Schneider's final assessment and the medical evidence in his own records and the records of other treating physicians. As shown, medical evidence in the record supports the conclusion that Plaintiff's headaches were not a significant issue and otherwise controlled by medication. Because Dr. Schneider's conclusions of functional limitations were inconsistent with his own

treatment notes and the weight of the objective medical evidence in the record, the ALJ properly discounted his medical opinion in determining Plaintiff's residual functional capacity. Furthermore, substantial evidence supports the ALJ's determination that Plaintiff's migraine headaches should not be considered when assessing her residual functional capacity.

**b. The ALJ Properly Found that Plaintiff Can Perform Jobs in the National Economy**

**1. The ALJ Presented a Proper Hypothetical Question to the Vocational Expert**

Once the ALJ determined that Plaintiff could not perform her past relevant work, the burden of proof shifted to the Social Security Administration to identify a significant number of jobs in the national economy that Plaintiff could perform. 20 C.F.R. § 404.1520; *Varley v. Sec'y Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). "To meet this burden, there must be a 'finding supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.' Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Varley*, 820 F.2d at 779 (internal citations omitted).

In this case, substantial evidence supports the ALJ's conclusion that there are a significant number of jobs in the national economy that Plaintiff can perform. At the September 6, 2006 hearing, the ALJ asked the vocational expert to consider a hypothetical individual with Plaintiff's vocational profile and residual functional capacity as determined by the ALJ. [Tr. 745-746]. As previously noted, the ALJ's determination of Plaintiff's residual functional capacity was supported by substantial evidence in the record, and thus the hypothetical question presented to the vocational expert accurately portrayed Plaintiff's individual physical and mental

14

impairments as required.  In response to this question, the vocational expert testified that the hypothetical individual could perform unskilled sedentary work activities.  [Tr. 746].  This testimony provides substantial evidence supporting the ALJ's finding that there are a significant number of jobs that Plaintiff can perform.

**2. The Vocational Expert Properly Explained Inconsistencies in his Testimony**

At the September 6, 2006 hearing, the vocational expert testified that a hypothetical individual with Plaintiff's vocational profile and residual functional capacity could perform unskilled sedentary work activities.  [Tr. 746].  He then identified examples of such work, specifically mentioning sedentary assembler, inspector, and hand packer jobs.  [Tr. 746].  When Plaintiff's counsel inquired as to the classification of these jobs in the Dictionary of Occupational Titles ("DOT"), the vocational expert testified that they were characterized as sedentary jobs.  [Tr. 749].  Plaintiff's counsel requested the DOT classification numbers for these jobs, which the vocational expert provided in a letter dated October 3, 2006.  [Tr. 145].  In that letter, he stated that the sedentary positions identified in the hearing are listed in the DOT as light positions.  [Tr. 145].  He explained that the DOT defaults to the "highest physical demand level required by a job under a particular description." [Tr. 145].  He then noted that the jobs are also performed as sedentary work and as unskilled work in accordance with his testimony at the hearing.  [Tr. 145].  Plaintiff argues that the vocational expert erred by testifying that the hand packer, sedentary assembler, and sedentary inspector jobs were sedentary.

When a conflict arises between the testimony of a vocational expert and the DOT, Social Security Ruling 00-4p requires an ALJ to obtain a reasonable explanation for the conflict before relying on the vocational expert's testimony in deciding whether a claimant is disabled.  Soc.

15

Sec. Rul. 00-4p, 2000 WL 1898704, at *2 (2000). Here, the vocational expert did so. In his letter, he explained that the identified jobs were listed as "light" jobs instead of "sedentary" jobs because the DOT defaults to the highest physical demand level required by the job. [Tr. 145]. He added that although the jobs could be performed at the light level, they could also be performed at the sedentary level as he had testified at the hearing. [Tr. 145]. This explanation is consistent with the reasonable explanations for conflicts provided by Social Security Ruling 00-4p. Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *3 (2000) ("The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."). Thus, the ALJ properly relied on the vocational expert's testimony at the hearing to support his decision that Plaintiff is not disabled.

### IV. Conclusion

Accordingly, the Court holds that substantial evidence supports the ALJ's finding that Plaintiff was not under a disability as defined by the Social Security Act and that she retains the residual functional capacity to perform sedentary work subject to several restrictions. Since the ALJ's decision applies the correct legal standards and is supported by substantial evidence, the Court must uphold it. *See Warner*, 375 F.3d at 390.

**WHEREFORE,** the Court being sufficiently advised, and for the reasons stated above:

1. Plaintiff's Motion for Summary Judgment is **DENIED**; and

2. Defendant's Motion for Summary Judgment is **GRANTED**.

Dated this 20th day of January, 2009.



**Signed By:**

*Karen K. Caldwell*

**United States District Judge**